UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JORGE V. S.,** | Civil Action No. 20-3675 (SDW) |
| **Petitioner,** | |
| v. | **OPINION** |
| **CHARLES GREEN, et al.,** | |
| **Respondents.** | |

**WIGENTON,** District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Jorge V. S., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Following an order to answer, the Government filed a response to the petition (ECF No. 4), to which Petitioner has replied. (ECF No. 5). For the following reasons, this Court will deny the habeas petition without prejudice.

**I. BACKGROUND**

Petitioner is a native and citizen of Ecuador who illegally entered the United States in 1999. (Document 2 attached to ECF No. 4 at 3). Petitioner thereafter moved to New Jersey, got married, and had a child with a United States Citizen. (*Id.*). During his time in New Jersey, however, Petitioner amassed a criminal history involving multiple minor criminal infractions and DUI charges. (*Id.* at 3-4). As a result of these charges, Petitioner came to the attention of immigration officials, and was taken into immigration custody in December 2016. (*Id.*). Petitioner thereafter received a bond hearing in January 2017, which resulted in bond being denied. (Document 4 attached to ECF No. 4 at 1-3). Petitioner thereafter filed a bond redetermination motion, which was ultimately granted in May 2017, resulting in his release on $6000 bond. (Document 5 attached

to ECF No. 4 at 1-2). Petitioner remained free until March 7, 2020, when he was arrested on domestic violence charges – charges which Petitioner asserts his wife fabricated. (ECF No. 1 at 2; ECF No. 4 at 3). Petitioner was thereafter taken into immigration custody based on the new arrest, and was scheduled for a bond redetermination hearing on April 14, 2020. (ECF No. 4 at 3). Following a hearing which Petitioner did not attend because he is in quarantine as explained below, the immigration judge denied release finding Petitioner a danger to the community in light of his criminal history and his wife's allegations of domestic violence. (ECF No. 5 at 2-3).

While detained in the facility and following the onset of the COVID-19 pandemic, Petitioner contracted a fever. According to an affidavit submitted by Petitioner's friend who spoke with Petitioner over the phone, this fever reached 104 degrees and was accompanied by chest pains and sweating. (ECF No. 1 at 5; Document 7 attached to ECF No. 1). Immigration and jail records, however, record that Petitioner "was moved to a quarantine pod on March 30, 2020[,] due to a fever of 100.4. However, Petitioner has not exhibited a fever since that day" and was required to remain in a quarantine pod for fourteen days. (ECF No. 4 at 10). Petitioner's counsel asserts in his reply that he believes Petitioner still suffers from chest pain and has a fever, but Petitioner, in both his petition and reply, has presented no evidence regarding Petitioner's medical condition other than the affidavit from Petitioner's friend regarding Petitioner's status on March 31 and April 1. (*See* ECF No. 1; ECF No. 5).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

In his habeas petition, Petitioner argues that his current conditions of confinement amount to a denial of his Due Process rights, and that he should therefore be entitled to outright release or a bond hearing at which the Government bears the burden of proving that he should remain detained in light of the current ongoing COVID-19 outbreak in the New York area. Under most circumstances, however, a conditions of confinement claim would properly arise only in a civil rights action under 42 U.S.C. §1983, rather than in a habeas proceeding. *See, e.g., Camacho Lopez v. Lowe*, No. 20-CV-563, 2020 WL 1689874, at *4-5 (M.D. Pa. Apr. 7, 2020). The relief Petitioner seeks, however, is his release or a bond hearing adjudicating his entitlement to release, neither of which is available through a civil rights proceedings, but both of which are standard forms of habeas relief. *See, e.g., Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973); *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002). Petitioner's claims therefore do not clearly fit into either category – they raise claims normally not available through a habeas proceeding, but seek relief only available through habeas corpus. While it is clear that a habeas petition may properly be used to challenge either the fact, length, or execution of an order of detention, and that conditions of confinement

claims must normally be brought as a civil rights action, neither the Third Circuit nor the Supreme Court have had occasion to directly rule on the propriety of bringing a conditions of confinement claim in a habeas petition. *Camacho Lopez*, 2020 WL 1689874 at *4-5; *see also Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241-42 (3d Cir. 2005); *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). Although the Supreme Court has deferred that question when it has been presented in the past, the Court has suggested that where the conditions challenged are sufficiently severe, "it is arguable that habeas corpus will lie to remove the restraints making custody illegal." *Preiser*; 411 U.S. at 499; *see also Ziglar v. Abbasi*, --- U.S. ---, ---, 137 S. Ct. 1843, 1862-63 (2017) (suggesting conditions of confinement claims that are not directly redressable solely through monetary damages may give rise to a basis for habeas jurisdiction because "necessity require[s the] use" of "the habeas remedy" to rectify the alleged wrong). The Third Circuit has likewise suggested that severe circumstances could give rise to a valid habeas claim based on a challenge seeking release based solely on extreme and unconstitutional conditions of confinement. *See Ali v. Gibson*, 527 F.2d 971, 975 n. 8 (3d Cir. 1978) (conditions of confinement claim could give rise "to a possible habeas attack[, which may be] cognizable in a federal habeas action only in extreme cases"), *superseded by statute on other grounds as stated in Callwood v. Enos*, 230 F.3d 627, 633 (3d Cir. 2000). Given that the parties largely agree that the COVID-19 pandemic is a significant and extraordinary situation warranting a particularized response from jail officials, this Court will assume for the sake of this opinion that the pandemic is a sufficiently grave circumstance to warrant permitting petitioners to seek habeas relief through a conditions of confinement claim which ordinarily would not be cognizable outside of a civil rights action.

      Turning to Petitioner's actual detention, it is clear from the facts of this matter that Petitioner is currently detained under the Government's discretionary immigration detention

authority under 8 U.S.C. § 1226(a).  Under that statute, the Government is authorized to detain or release on parole or bond an alien pending a final order of removal.  *See Jennings v. Rodriguez*, --- U.S. ---, ---, 138 S. Ct. 830, 838 (2018).  Where the Government chooses to detain the alien, the alien is free to request a bond hearing from the immigration judge.  *See, e.g., Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278-79 (3d Cir. 2018).  At such bond hearing, the alien bears the burden of proving that he is neither a danger to the community nor a flight risk.  *Id.* at 279.  Where an immigration judge makes a decision as to bond, and the underlying bond hearing was not in someway violative of Due Process, "[n]o court may set aside any action or decision taken by [the immigration judge] . . . . regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."  *Id.* (quoting 8 U.S.C. § 1226(e)).  The proper means of addressing the merits of an immigration judge's bond decision is instead an appeal before the Board of Immigration Appeals.  *See* 8 C.F.R. § 236.1(d).  Even where a bond decision has been issued, discretionary detainees are free to seek a redetermination of their custody status at any time based on changed circumstances.  8 C.F.R. § 1003.19.

Here, Petitioner received several bond hearings and was ultimately released on bond.  He was taken back into custody based on his having been arrested on domestic violence charges in violation of his bond, was thereafter denied bond as the immigration judge found him to be dangerous in light of the new allegations of domestic violence.  As Petitioner has not in any way shown that his underlying bond hearings were violative of Due Process other than to assert his vehement disagreement with the immigration judge as to the legitimacy of the new domestic violence charges,[1] Petitioner is not, absent his conditions of confinement claim, entitled to a bond

---

[1] Although Petitioner asserts that he has submitted "proof" that his wife's allegations of domestic violence are false and were made because she thought him to be engaged in adultery, Petitioner has submitted nothing of the kind - he has provided only his own allegations and an affidavit from

hearing or release. *Borbot*, 906 F.3d at 278-79. Petitioner's request for release or a COVID-19 based bond hearing thus must rise or fall with his conditions of confinement claim.

In his habeas petition, Petitioner contends that the conditions under which he is confined amount to a Due Process violation in light of his purported medical needs and his belief that the actions taken by the jail in which he is confined are insufficient to protect him from COVID-19. Such a conditions claim could be construed in two fashions – as a claim asserting that the jail has been deliberately indifferent to Petitioner's medical needs, or as a claim asserting that the conditions under which he is detained amount to an unconstitutional application of punishment without a supporting conviction in violation of the Due Process Clause. As there is no clear guidance from the Courts of Appeals or Supreme Court on how to adjudicate such claims in light of an ongoing pandemic, many courts have found that insufficient jail action in light of the virus can serve as a basis for release under these types of claims, *see, e.g,*, *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Cristian A.R. v. Thomas Decker, et al.*, No. 20-3600 (D.N.J. Apr. 12, 2020); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Castillo v. Barr*, No. 20-00605, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020); while many others have found that, where the jail takes adequate precautions in light of a given petitioner's medical history, no such relief is

---

the woman he was accused of being in a relationship with which states that he was not in a relationship with her and that she did not see him strike his wife. (Document 2 attached to ECF No. 1 at 35-36). That affidavit is largely immaterial as nothing in the record clearly demonstrates that Petitioner did or did not strike his wife, and Petitioner appears to still be subject to domestic violence charges which have not been dismissed. In any event, this Court has no authority to second guess the immigration judge's finding of dangerousness and cannot disturb the outcome of his current bond ruling based solely on Petitioner's disagreement with the immigration judge as to the legitimacy or seriousness of his new domestic violence charges. 8 U.S.C. § 1226(e).

warranted. *See, e.g., Dawson v. Asher*, No. 20-409, 2020 WL 1304557 (W.D. Wa. Mar. 19, 2020) (rejecting TRO request because detainees could not succeed on merits of request for relief without at least showing concrete likelihood of actual injury as opposed to mere speculation in light of the legitimate governmental interest in detaining aliens throughout removal proceedings); *Sacal-Micha v. Longoria*, No. 20-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) (rejecting habeas TRO based on medical conditions of confinement claim as that claim normally must be brought under § 1983, and in any event such a claim is not likely to succeed in the absence of a showing of deliberate indifference to the detainees medical needs); *Lopez v. Lowe*, No. 20-563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020) (denying request for TRO by habeas petitioner as he could not establish deliberate indifference to his medical needs).

Turning first to the issue of Petitioner's medical needs, for an immigration detainee to make out a claim for relief based on a jail official's deliberate indifference to his medical needs under the Due Process Clause, he must show both that he is subject to a sufficiently serious medical need, and that jail officials have been deliberately indifferent to that need. *See, e.g., Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Even assuming that COVID-19 in and of itself is a sufficiently serious need, or that Petitioner's 100.4 degree fever, which has since abated, is sufficiently serious to oblige the jail to take action to alleviate the risk presented by the virus, success on such a claim would still require Petitioner to show that officials at the jail were deliberately indifferent to that need – i.e. that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the defendant was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists and . . . dr[e]w th[at] inference." *Id.* Where some treatment or proscriptive action designed to alleviate the medical need has been provided and the dispute is over the adequacy of the treatment or preventative steps taken, federal courts "are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). Neither a detainee's subjective dissatisfaction or disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are normally sufficient to establish deliberate indifference. *Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

The record of this matter clearly indicates that the officials at the jail were not deliberately indifferent to Petitioner's fever, nor the general risk posed by COVID-19. In accordance with CDC guidance for correctional facilities, the jail has screened each detainee upon admission for fever or disability, and accommodated disabilities as necessary, and has provided twenty-four hour medical staff in the form of at least two nurses in the building at all times, a nurse practitioner on site at all times, a physician on site sixteen hours a day, seven days a week, and an on call physician at all times. (Document 6 attached to ECF No. 4 at 2-3). To prevent the spread of any COVID-19 infections, the jail has cancelled all classes conducted by volunteers or part-time workers, has amassed a six-month inventory of supplies, and has provided detainees with education on best practices for handwashing and social distancing during the pandemic. (*Id.* at 4). The jail has also adopted a policy of providing daily monitoring for inmates who have medical conditions which could aggravate COVID-19 infection, and prepared plans to remove such individuals to a separate facility if the situation so required. (*Id.* at 4-5). The jail has also increased monitoring for all

detainees, established a separate quarantine facility, increased sanitization of jail facilities and hired additional cleaning staff, provided meals directly to inmates in their pods, transitioned attorney and contact visits to window visits only, limited entrance into the facility, increased health screening of all employees and outside vendors before they enter the facility including by barring those showing symptoms and high temperatures, and added nursing staff to all pre-booking processes to provide a health and temperature check as each detainee or inmate arrives in the facility. (*Id.* at 5-6). The jail has also acquired numerous COVID-19 testing kits, has set up procedures for private attorney calls for detainees and inmates, has begun quarantining all new detainees for fourteen days with twice daily temperature checks, implemented food safety policies, and provided all inmates with a free daily five minute telephone call. (*Id.* at 7). All inmates or detainees complaining of illness are being screened and subjected to health and temperature checks, with any inmate showing signs of COVID-19 infection being provided a surgical mask, and any inmate or detainee who has moderate or severe symptoms being immediately transferred to a hospital for COVID-19 testing and treatment. (*Id.* at 8). Pending the outcome of testing, symptomatic detainees are moved into quarantine for fourteen days in a separate housing unit in which each detainee is housed singly in a cell normally given double occupancy to permit social distancing. (*Id.* at 9). Those who have been exposed to individuals who have confirmed COVID-19 cases and lack symptoms have also been housed together in a unit in which they remain for fourteen days. (*Id.*). As the jail is currently operating well under capacity, these cohorted detainees are provided "ample room for social distancing." (*Id.*). The jail has also begun to provide detainees with "unlimited access to soap and unlimited access to water" as well as provided detainees with disinfectant upon request which they may use under an officer's supervision throughout the day. (*Id.* at 9-10). Clearly, jail officials are well aware of the risks and dangers

posed by COVID-19 and have taken more than adequate steps to alleviate that risk to the best of their ability, and have also directly provided Petitioner treatment for the fever he suffered on or about April 1, and Petitioner therefore cannot show that the jail has been deliberately indifferent to his needs in relation to the COVID-19 pandemic.[2]  That these steps do not guarantee Petitioner will remain healthy and free of the disease is immaterial, the constitution requires no such perfection.  *See, e.g., Sacal-Micha;* 2020 WL 1518861 at *6 (jail officials need not "fully guarantee" a detainee's health and safety to meet their constitutional obligations).  Petitioner's conditions of confinement claim, to the extent that it is based on the deliberate indifference of jail staff to the medical needs presented by the COVID-19 pandemic thus fails.

Petitioner's claim fares no better when construed as a more general conditions of confinement claim.  Under the Due Process Clause, those individuals who are subject to government detention not arising out of a criminal conviction, such as immigration detainees, may not be subjected to conditions so harsh that they amount to punishment. *Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979).  A claim challenging conditions under the Due Process Clause thus has both a subjective and objective component – the objective component requiring a showing that the deprivation involved in the conditions was sufficiently serious, and the subjective component requiring that jail officials act with a sufficiently culpable mind.  *Id.* at 68.  The subjective component can be established by showing an express intent to punish; or by showing that the conditions in question were arbitrary, purposeless, or excessive in relation to the ascribed governmental objective.  *Id.*  Conditions which

---

[2] To the extent Petitioner asserts without so much as a certification or affidavit in his reply brief that he continues to be ill, he has provided no actual evidence or support for that assertion other than Petitioner's placement in quarantine pursuant to jail policies following his prior illness. Petitioner has thus not shown that he suffers from a continuing medical condition requiring further treatment.

are reasonably related to a legitimate government interest and which are not excessive in relationship to that interest will therefore not support a claim in the absence of a showing of an express intent to punish. *Id.* at 67-69.

Here, Petitioner has not met either the objective or subjective prong of the Due Process conditions of confinement test. While COVID-19 is a serious health crisis which undoubtedly requires action on the part of jail officials, the officials here have taken, as outlined above, significant responsive action to the illness both in the hopes of preventing its spread and treating those who have been infected. In the absence of a specific and objectively pre-existing serious medical condition which would oblige the jail to take further individualized steps to protect a detainee from the virus, the steps the jail has taken in this matter have more than alleviated any "deprivation" present in the facilities current conditions. As Petitioner has no such pre-existing condition, and by his own admission was provided medical treatment and placed in quarantine because of his fever, which has since apparently abated, Petitioner has not shown a sufficiently serious deprivation in light of the significant steps the jail has taken to alleviate the risks posed by COVID-19.

Even were this not the case, however, Petitioner also cannot meet the subjective prong of the Due Process test. First, Petitioner has not alleged, let alone shown, an express intent to punish. Second, immigration detention is clearly reasonably related to a legitimate government interest – the Government's interest in securing those subject to removal proceedings pending the conclusion of those proceedings in order to ensure they do not abscond and that they attend those proceedings while also ensuring they are not a danger to the community in the meantime. *See, Dawson*, 2020 WL 1304557 at *2; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690-91. Notwithstanding the COVID-19 crisis, and in light of the

significant steps the jail has taken to address that crisis, the conditions under which Petitioner is currently confined are not excessive in relation to that purpose.  Petitioner has thus failed to show that the conditions under which he is housed are arbitrary, purposeless, or excessive, and his conditions of confinement claim fails for that reason.  Petitioner's claims thus fail under either applicable conditions of confinement claim available to him, and his petition is therefore denied.

**III. CONCLUSION**

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is DENIED WITHOUT PREJUDICE.  An appropriate order follows.


Dated: April 21, 2020               *s/ Susan D. Wigenton*
                                    Hon. Susan D. Wigenton,
                                    United States District Judge